IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      Plaintiff,

vs.                                                   No. CIV. 00-1180 MV/KBM

**PAUL REPASS UMBERGER III, a/k/a**
**PAUL R. UMBERGER III, C.N.P.,**

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on the United States' motion for summary judgment **[Doc. 4]**. The Court having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED IN PART**, as explained below.

**BACKGROUND**

The United States brought this action under 28 U.S.C. § 1345, seeking recovery of loan repayment funds from *pro se* defendant Paul Umberger, a certified nurse practitioner. The following facts are undisputed.

On April 4, 1994, Umberger signed and applied for a scholarship award through the National Health Services Corps (NHSC) Loan Repayment Program (LRP). *See* 42 U.S.C. § 254l. This program is designed to assure the provision of medical practitioners in "health professional shortage areas," as designated by the Secretary of the Department of Health & Human Services (HHS). *See* 42 U.S.C. § 254e. On January 25, 1995, Umberger entered into a NHSC/LRP

1

contract. Pursuant to the contract, loan repayment funds totaling $27,737.27 were paid to Umberger or a lending institution on Umberger's behalf. These funds were paid on the condition that Umberger provide health services on a full-time clinical basis in an assigned health professional shortage area for a period of two years. On April 3, 1995, Umberger signed a National Health Service Corps Private Practice Assignment Agreement. He was assigned to serve at the Lewis County Primary Care Center in Vanceburg, Kentucky, from January 25, 1995, to January 24, 1997.

On September 4, 1995, HHS received notification from the Lewis County Primary Care Center that Umberger had resigned. He had completed 219 days of service – not the two-year service obligation required under his NHSC/LRP contract. On December 5, 1995, the government notified Umberger that he was in default. Ultimately, on June 7, 2000, it issued a Certificate of Indebtedness stating that Umberger's debt, as of May 15, 2000, was $65,608.10: principal in the amount of $27,737.72, interest in the amount of $13,870.38 (at the fixed rate of 13.5% per annum), and an unserved obligation penalty of $24,000.00.

The United States filed this action on August 18, 2000. It now seeks the amount stated in the Certificate of Indebtedness, with the following additions: interest accruing on the unpaid principal balance at the fixed rate of 13.5% per annum from June 7, 2000, until the date of judgment; interest at the legal rate from the date of judgment compounded annually until the judgment is paid in full; attorneys' fees in the amount of $6,560.81; U.S. Marshal fees in the amount of $81.95; U.S. District Court docket fees in the amount of $150.00; and the costs of this action.

**STANDARD OF REVIEW**

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citations omitted). The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citation omitted). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**ANALYSIS**

42 U.S.C. § 254o(c)(1)(A) provides that if an individual breaches his NHSC/LRP contract by failing to complete a two-year period of obligated service, the United States may recover an amount equal to the sum of (i) the total of the amounts paid by the United States to the individual for that period and (ii) the unserved obligation penalty. If the individual failed to serve a full year, the unserved obligation penalty is the full number of months of his obligated service multiplied by

$1000. 42 U.S.C. § 254o(c)(3). Here, because Umberger served less than a year at the Lewis County Primary Care Center, his unserved obligation penalty is $24,000.

Umberger makes three general points in opposition to the motion for summary judgment. First, he argues that the NHSC failed to reassign him to another site "upon termination of his contract by the Lewis County Primary Care Center." *Affidavit of Opposition to Motion for Summary Judgment* at 2. The record, however, shows that on June 10, 1995, Umberger notified the center that he would no longer work a 40-hour week there due to his acceptance of an offer from Ohio State University for an appointment as a clinical instructor and a commission from the U.S. Navy as a nurse practitioner in the Ready Reserve. HHS promptly notified Umberger that he would be in violation of the terms of his NHSC/LRP contract if he worked at the center on only a part-time basis.

On July 9, 1995, Umberger told HHS that the center had not offered him a new employment contract. Upon investigation, however, HHS officials determined that Umberger's employment contract would be automatically renewed unless either he or the center provided written notice 60 days prior to the end of the contract, which neither party had done.[1] On August 6, Umberger notified HHS that he would remain at the center on a part-time basis. Again, HHS advised him that part-time employment would violate the terms of his NHSC/LRP contract. On September 4, Umberger stated that he would no longer continue at the center due to its working conditions. On September 29, the center notified HHS that Umberger had left his job there on August 31 in order to pursue his teaching position at Ohio State University. These events show

---

[1] Umberger conspicuously omits this portion of his employment contract in his opposition to the government's motion for summary judgment.

4

that Umberger left his assigned position at the Lewis County Primary Care Center voluntarily, placing him in default status for failure to fulfill the requirements of his NHSC/LRP contract.

Second, Umberger argues that he in fact completed 395, not 219, days of service, since he began work at the Lewis County Primary Care Center on August 1, 1994.  However, as HHS explained in a letter dated April 10, 1995, Umberger was practicing under a temporary Kentucky license from August 1, 1994, to January 24, 1995.  Providers with temporary licenses may not participate in the NHSC/LRP program.  Accordingly, Umberger's NHSC/LRP contract provided that his two-year service obligation would run from January 25, 1995, to January 24, 1997.  He is not entitled to credit for work performed before January 25, 1995.

Finally, Umberger contends that he has made good-faith efforts to pay back the loan repayment funds and/or complete his obligated service.  The Court finds this contention to be without factual support.  The record shows that HHS officials gave Umberger several opportunities to avoid default status.  Umberger wasted these opportunities by not rectifying his part-time status at the Lewis County Primary Care Center and then quitting altogether; failing to make required good-faith payments and submit necessary credential documents as a precursor to discharging his debt through service at an alternative site; and claiming to have satisfied his obligation through service at sites not designated as "health profession shortage areas."

Accordingly, the Court finds that the United States' motion for summary judgment is due to be granted.  It shall be granted judgment in the amount of  $65,608.10 consisting of $27,737.72 principal, $13,870.38 accrued interest at the rate of 13.5% per annum as of June 7, 2000, and an unserved obligation penalty of $24,000.00; interest accruing on the unpaid principal

balance at the rate of 13.5% per annum from June 7, 2000, until the date of judgment; and interest at the legal rate from the date of judgment compounded annually until the judgment is paid in full.

The United States' request for attorneys' fees and costs is not supported by the current record and therefore will not be granted at this time. It may apply for attorneys' fees and costs as allowed by law. Any application should include an itemization of time and expenses and citations to authority showing why an award is justified.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the United States' motion for summary judgment is hereby **GRANTED IN PART**. The United States shall be granted judgment in the amount of $65,608.10, consisting of $27,737.72 principal, $13,870.38 accrued interest at the rate of 13.5% per annum as of June 7, 2000, and an unserved obligation penalty of $24,000.00; interest accruing on the unpaid principal balance at the rate of 13.5% per annum from June 7, 2000, until the date of judgment; and interest at the legal rate from the date of judgment compounded annually until the judgment is paid in full. The United States' request for attorneys' fees and costs shall not be granted at this time.

_____
MARTHA VAZQUEZ
U. S. DISTRICT JUDGE

Attorney for Plaintiff
Manuel Lucero, Assistant U.S. Attorney

Defendant
Paul R. Umberger, III, pro se